LONDON GUARANTEE & ACCIDENT CO.
v. FRAZEE et al.

No. 7007.   Decided October 9, 1947.   (185 P. 2d 284.)

See 45 C. J. S., Insurance, sec. 825. What employees are engaged in interstate commerce within Federal Employers' Liability Act, see note 90 A. L. R. 846. See, also, 35 Am. Jur. 860. Construction and application of provision of insurance policy in case of injury or death while on public conveyance, see note, 36 A. L. R. 811. See, also, 29 Am. Jur. 723.

*Ray, Quinney & Nebeker,* of Salt Lake City, for appellant.

*Skeen, Thurman & Worsley* and *Hanson & Hanson,* all of Salt Lake City, for respondents.

LATIMER, Justice.

Defendant Mose J. Frazee was employed by the defendant Bamberger Railroad Company as a car inspector. His principal place of work was at Arsenal, Utah, which is located some twenty-eight miles north of Salt Lake City, Utah. His duties consisted of inspecting cars handled by the railroad while being loaded and unloaded at Arsenal. Approximately 98% of his work had to do with inspecting cars being used in interstate commerce. Frazee lived in Salt Lake City and travelled to Arsenal on a regular passenger train of the defendant railroad, leaving Salt Lake City at 12:01 a. m. However, he was at liberty to travel by other means of conveyance if he so desired. On August 18, 1944, he boarded the train at Salt Lake City to proceed to his work at Arsenal. Before arriving there the train on which he was riding collided with another car belonging to the same railroad, and Frazee was seriously injured.

Defendant railroad company had three policies of insurance, the first one being with the plaintiff and appellant company, in which the railroad was indemnified against loss or damage, within the limits of the policy, resulting from injury to or damage suffered by any employee of the company while in the course of his employment in interstate commerce. The second policy was similar in terms; however, the liability was only for the excess over and above that provided in appellant's policy. The third policy insured the railroad against loss by reason of injury or damage to passengers resulting from the railroad's negligence.

Defendant Frazee instituted an action against the defendant, Bamberger Railroad Company in a state court and alleged in his complaint that he was either a passenger or an employee engaged in interstate commerce at the time he was injured. Appellant, to protect its rights, instituted an action in the United States District Court to obtain a judgment declaring Frazee not to be an employee engaged in interstate commerce at the time he was injured.

After this suit was filed in the Federal Court, Frazee amended his complaint in the state court so as to eliminate the allegation that he was either a passenger or an employee in interstate commerce, and limited his pleading to his being a passenger. This amendment ended the controversy insofar as appellant was concerned and accordingly the Federal Court dismissed the action. Following the dismissal of the action in the Federal Court, Frazee again amended his complaint so as to allege his status as either a passenger or an employee in interstate commerce and the appellant was again brought into the controversy.

Appellant then commenced this action in the state district court under the declaratory judgment section of our statute, Utah Code 1943, 104-64-2, seeking to have its rights determined. Prior to the trial of this matter in the court below, Frazee's case against the railroad was called for trial and all parties to that controversy entered into a settlement agreement which in substance left final settlement be-

tween the insurance carriers to abide the results of this litigation.

The sole question on this appeal is: Did the district court err in determining that Frazee was injured while in the course of his employment in interstate commerce? The evidence presented to the trial court was meagre and that which is applicable to the questions hereinafter discussed will be fully digested.

There are certain facts which are either admitted or are without conflict. In substance, these are that Frazee was in the employment of the railroad company. He was paid on a monthly basis and received his pay check twice a month. Regardless of the number of days in the month, unless he worked a double shift, his pay was always the same amount. The railroad employed a total of three car inspectors at Arsenal, each of whom worked a consecutive eight-hour shift, so that there was always one of them on duty during the whole twenty-four hours of each day. Each of these inspectors was furnished a pass by the railroad and each was paid the same rate of pay. Two of them lived at Farmington, Utah, and the time consumed by them in travelling to Arsenal was considerably less than that required by Frazee, who lived in Salt Lake City, a much farther distance away. The time required by the inspectors to return to their homes after finishing the day's work was not taken into consideration in figuring the amount of their monthly pay.

Continuing the admitted facts, we find that Frazee's habit was to catch the 12:01 a. m. Bamberger train out of Salt Lake City northbound to Ogden, which would take him to Arsenal, his place of work. He was not required to take this train, but could go by any means whatsoever he elected to use. The train he rode was a regularly scheduled passenger train. Frazee had no control over it, had been assigned no duties to perform while en route, was never called upon to perform any, and was permitted the same privileges as other passengers. Upon reaching the Bamberger Station at Arsenal, Frazee would report to the station agent, and if

there were cars to be inspected he would make his inspection; if not, he might either go to the yard or wait in the station. The yard was in close proximity to the station, and in order to reach the cars he was to inspect he sometimes walked over Bamberger property and sometimes over government property. After completion of his tour of duty he filled out a time card and showed the hours of work as nine. His shift ended at 9:00 a. m. but if the work was slack and another inspector had arrived, he could leave on the 8:00 a. m. train. Frazee was not required to punch a clock, and on the two occasions when he relieved other inspectors, and took over their shift, he was paid for nine hours work on the second shift, the same as on the first shift, even though no travel time was needed for him to get to work on the second shift, he being already on the job.

The method used by the railroad to compute overtime rate of pay was to multiply the number of days of the month by nine, and then divided the monthly pay rate by the number of hours. The result of this was to pay a higher hourly rate in the short months, and a lower rate in the long months. Two additional facts admitted were that there was no written contract of employment between Frazee and the railroad, nor any written rules of regulations concerning the employment furnished him; and lastly, the three car inspectors, of whom Frazee was one, were the only railroad employees at Arsenal drawing travel pay. Other testimony will be referred to in the opinion where it is deemed appropriate.

Appellant's contention that Frazee was not an employee engaged in interstate commerce at the time of his injury must fail if there is any competent evidence in the record to sustain the court's finding to the effect that he was so employed and so engaged. Our duty is to affirm the judgment of the trial court if, after a search of the record, we conclude there is substantial, competent evidence to sustain its findings. Even though we might have come to a different decision had we originally heard the action, we cannot now substitute our judgment for that of the trial court.

In this case there are two questions to be considered: (1) Was Frazee engaged in interstate commerce at the time of his injury? and (2) Was it contemplated between Frazee and his employer, the Bamberger Railroad, that his employment was to commence when he boarded the train in Salt Lake City?

Both the United States Supreme Court and this court have held that an employee whose duties are to inspect cars used in interstate commerce is in fact engaged in interstate commerce while performing this particular kind of work. The test of employment in "interstate commerce" is whether the employee is employed in interstate transportation, or some work so closely related to it as to be practically a part of it. *New York, N. H. & H. R. Co.* v. *Bezue,* 284 U. S. 415, 52 S. Ct. 205, 76 L. Ed. 370, 77 A. L. R. 1370; *Southern Pacific Co.* v. *Industrial Accident Commission of California,* 251 U. S. 259, 40 S. Ct. 130, 64 L. Ed. 258, 10 A. L. R. 1181; *Lasagna* v. *McCarthy, et al.,* 111 Utah 269, 177 P. 2d 734. The record in this action indicates that approximately 98% of the cars inspected by Frazee were being used in interstate transportation, and we would unhesitatingly hold Frazee to have been engaged in interstate commerce if he had been injured while actually inspecting the cars. The fact that some of the cars were being used in intrastate movement is of no concern. See *Erie R. R. Co.* v. *Winfield,* infra.

Assuming for the purpose of disposing of the first question that Frazee was employed from the time he left Salt Lake City, would the fact that at the time of injury he was travelling to his work remove him from being employed in interstate commerce? Many cases have been cited by counsel touching on this subject; however, we shall allude to only a few of those most nearly in point.

In the case of *Erie Railroad Co.* v. *Winfield,* 244 U. S. 170, 173, 37 S. Ct. 556, 557, 61 L. Ed. 1057, Ann. Cas. 1918B, 662, the Supreme Court of the United States held that an employee who had finished his labor and was leaving the em-

ployer's yard was engaged in interstate commerce. The rule announced in that case, if not decisive of the case at bar, is yet persuasive. Said the court:

"* * * In leavng the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. See *North Carolina R. Co.* v. *Zachary*, 232 U. S. 248, 260, 34 S. Ct. 305, 58 L. Ed. 591, 596, 9 N. C. C. A. 109, Ann. Cas. 1914C, 159. Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so, when he was leaving the yard at the time of the injury, his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is, for present purposes, of no importance."

In an earlier case, *Erie Railroad Co.* v. *Welsh,* 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319, the same court held that a yard conductor injured while alighting from a slow-moving freight engine for the purpose of reporting to the yard master for further orders was not engaged in interstate commerce. The difference in the facts and appellate procedure were such that the two holdings are not in conflict. In the Welsh case the court refused to upset the ruling of the state court for the reason that final determination of the question turned on whether or not the series of acts performed by the employee were a succession of separate tasks or a single and divisible task. The court held this involved an appreciation of the testimony and inference therefrom, and therefore was within the exclusive province of the state jury to decide.

The Supreme Court of New York in *Heffron* v. *New York Central & H. R. R. Co.,* 223 N. Y. 473, 119 N. E. 1024, held an employee who was killed on the way to his work in the morning was engaged in interstate commerce, and the 5th Circuit Court of appeals in *Atlantic Coast Line R. R. Co.* v. *Williams,* 5 Cir., 284 F. 262, held a foreman employed in shifting cars on interstate trains, injured in going to his work while attempting to board employer's shuttle train (which was used exclusively in conveying employees), was

engaged in interstate commerce at the time of his injury. For other cases touching on this subject, see *Louisville & Nashville R. R. Co.* v. *Walker,* 162 Ky. 209, 172 S. W. 517; *St. Louis Southwestern R. Co.* v. *Brothers,* Tex. Civ. App., 165 S. W. 488; *Philadelphia, Baltimore & Washington R. Co.* v. *Tucker,* 35 App. D. C. 123, L. R. A. 1915C, 39; *Hendicks* v. *New York, N. H. & H. R. Co.,* 251 N. Y. 297, 167 N. E. 449.

In keeping with the reasons set forth in the foregoing authorities, it can be said in this case if Frazee's employment commenced at the time he boarded the train in Salt Lake City, the relationship of master and servant existed. Furthermore, he was travelling to Arsenal upon property owned by the master; he was engaged in discharging the duty of his employment and was on his way to presently perform duties connected with interstate commerce. This is sufficient to bring him within the requirements of interstate commerce.

In connection with the second question under consideration, the parties have referred to many of the cases dealing with the status of employees en route to the situs of their principal task. It is considered advisable to refer to a few of these cases for the purpose of emphasizing the fact that the important element to be determined is this: At what time did the contract of employment contemplate the employee would affix himself to his daily work?

Ordinarily, injuries received by an employee going to or from work are not received in the course of employment because the contract of employment does not usually contemplate a master-servant relationship until the employee has reached his place of work. However, there are exceptions to this rule which have been recognized by this court and by courts of other jurisdictions. The *Cudahy Packing Company* v. *Industrial Commission,* 60 Utah 161, 207 P. 148, 28 A. L. R. 1394; and the *Bountiful Brick Co.* v. *Industrial Commission,* 68 Utah 600, 251 P. 555, have held employees to be entitled to compensation

when the injury occurred while the employee was using a means of approach to the scene of their duties.

In the cases of *Denver & Rio Grande W. R. Co.* v. *Industrial Commission et al.*, 72 Utah 199, 269 P. 512, 62 A. L. R. 1436, and *Roberts* v. *Industrial Commission*, 87 Utah 10, 47 P. 2d 1052, this court held the employees not to be entitled to compensation for injuries sustained while they were on their way to work because the contract of employment did not contemplate transporting the employees either to or from their place of work. In the former case the court indicated that the transportation contemplated by the contract was only from the section house to the place of work, and the employee at the time of his death had not reached the starting point. A contrary holding is indicated had the employee been injured after reaching the place from whence the master had agreed to carry him to the job.

The United States Supreme Court in the case of *Voehl* v. *Indemnity Insurance Company of North America*, 288 U. S. 162, 169, 53 S. Ct. 380, 382, 77 L. Ed. 676, 87 A. L. R. 245, announced the following rule:

"* * * Ordinarily the hazards they (employees) encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 424, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. See, also, *Bountiful Brick Co.* v. *Giles*, 276 U. S. 154, 158, 48 S. Ct. 221, 72 L. Ed. 507, 66 A. L. R. 1402. While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

In the *Voehl* case the employee used his own automobile and was paid a mileage allowance and travel time. While

the opinion did not treat the situation where the employee was not expressly directed to use the particular conveyance, the following cases do. *Konopka et al.* v. *Jackson County Road Commission,* 270 Mich. 174, 258 N. W. 429, 97 A. L. R. 552; *Scott et al.* v. *Willis,* 150 Va. 260, 142 S. E. 400; *Harrison* v. *Central Const. Corp.,* 135 Md. 170, 108 A. 874..

The United States Supreme Court in its latest pronouncement on this matter, reached the conclusion that when the contract of employment contemplates including travel time, the employee is entitled to compensation for injuries sustained while he is enroute to work by any reasonable method of travel. *Cardillo* v. *Liberty Mutual Insurance Co.,* 330 U. S. 469, 67 S. Ct. 801, 809. Said the court:

"* * * It was found that Ticer's employer paid the costs as a means of carrying out its contract obligation to furnish the transportation itself. Where there is that obligation, it becomes irrelevant in this setting whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use. In other words, where the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed. * * *"

The underlying principle of the foregoing cases is that when the contract of employment contemplates that the relationship of master and servant commences at the time the employee starts on his journey to work, ■ unless there is some departure (not present in this action), the servant is in the course of his employment during the travel time.

*Sassaman* v. *Pennsylvania R. Co.,* 3 Cir., 144 F. 2d 950, one of the cases relied on by the appellant, is not contrary to the principle announced above. The majority opinion in that case makes reference to the fact that Sassaman was riding on a pass that had been given him because of his length of service with the railroad. Such being the case, the court found that the contract of employment did not

contemplate a master and servant relationship during the travel period.

The question under discussion would be easier of solution were it based on a suit by an employee who had consistently claimed his employment began when he mounted the train. Here, however, we are faced with trying to harmonize the evidence of the employer to the effect that the contract of employment did include travel time, with that of the employee who was uncertain about his status. Different as the situation may be, we cannot disregard the employer's evidence if it is sufficient to justify the trial court in its findings.

There were only two witnesses called to testify. These were the employee, Frazee, and the auditor and secretary-treasurer of the employer. The important parts of Frazee's testimony are these: There was no written contract of employment. His employment was discussed with an agent of the railroad company (but the substance of the discussion is not disclosed by the record). There were no written regulations concerning the employment. While his regular employment at Arsenal was eight hours, he was directed to and did fill out his time card for nine hours. The train upon which he travelled left Salt Lake City at 12:01 a. m. and his shift at Arsenal ended at 9:00 a. m. He regularly rode the same train to Arsenal, from which he went directly to his inspecting work. He was paid by the month and his pay was the same regardless of the number of days in the month. He returned to Salt Lake City on the train leaving Arsenal at 8:00 a. m. or on the one leaving at 9:00 a. m. If he rode the former, he would have worked seven hours; if the latter, eight hours. Most significant of all testimony given by Frazee in connection with his status while en route to work is that contained in the following excerpt from the record:

"Q. What did you do on the way out there when you rode the Bamberger out to Arsenal? A. I can read the paper or do whatever I want.

"Q. Were you ever called upon to perform any duties? A. No sir, not supposed to.

"Q. Did you ever perform any duties? A. No sir.

"Q. Did anyone ever tell you that you were subject to perform any duties on the way out? A. Not that I know of * * *."

If therefore, the contract of employment included the performance of duties on the part of the employee, no one so informed Frazee. However, freedom from duty is not necessarily persuasive in this type of relationship. The underlying principle of the holding that the employee is within the course of his employment is not based on whether the employee is required to perform duties while en route. It is based on the contract of employment. Very seldom, if ever, are duties required in those cases where the employer agrees to transport an employee to a given place to work.

Before detailing the testimony given by the other witnesses, we consider it necessary to dispose of appellant's contention that the testimony given by H. L. Balser, the auditor, was incompetent and could not be considered by the trial court. With this argument we cannot agree. The witness was Auditor and Secretary-Treasurer of the Bamberger Railroad, and while he could not testify to any conversations with the employee because of never having been present when the terms of employment were discussed, he nevertheless was qualified to testify to the hours of work, the rate of pay, the time employment began and ceased, the methods used by the company to determine ordinary and overtime rates of pay, the issuance of passes to the employees and the facts establishing a course of conduct over a period of years. In addition, this witness, Mr. H. L. Balser, testified at the request of both parties and part of the questioned evidence was elicited by counsel for the appellant company. Appellant, having called Balser as a witness to establish Frazee's contract of employment, is in no position to raise the competency of his testimony.

In substance, Balser's testimony was as follows: That he was auditor and secretary-treasurer of the company at the time of the accident, and as such had custody and control of the payroll records; that he was familiar with the employment program at Arsenal, where there were 28 to 30 employees; that the three car inspectors were the only employees who worked at Arsenal eight hours per day and were paid for nine hours, his testimony being that the one hour was for travel time, regardless of the actual time consumed; that when an inspector mounted the train at Salt Lake City his pay started; that had the need for the services of an inspector arisen while Frazee was en route to Arsenal, he would have been taken from the train for the emergency purpose; that the company had done this on numerous occasions although only one instance was related and the inspector identified; that while Frazee could have travelled by other means of conveyance, he would not have received nine hours' pay as his whereabouts would have been unknown and he would not have been available for duty; that in determining the rate of pay for excess hours, the hourly rate was determined by multiplying the number of days of the month by nine (hours) and then dividing this into the monthly rate; that this resulted in a fluctuation of the hourly rate, depending on the length of the month; that on two occasions Frazee was paid on this basis.

Under the evidence of this case and the fair inferences deducible therefrom the trial court concluded that the contract of employment contemplated that Frazee was to be an employee while on the defendant's train en route to Arsenal. Appellant challenges this finding as not supported by the evidence. Apparently this assignment is based on the contention that the acts and conduct of the parties, during the time the contract of employment was in force, affirmatively established the fact that Frazee was not in the employment of the railroad until he commenced his duties at Arsenal. To sustain appellant's contention it would be necessary for this court to hold that Balser's testi-

mony was either incompetent or so inherently improbable that it was unworthy of belief. We have disposed of the question of the competency of the evidence, and therefore proceed to the latter ground.

Aside from the question of the employee's being subject to call while aboard the employer's train on his way to work, the evidence was that over a period of years the employer had interpreted the contract of employment for this particular job to include travel time. The evidence was further that the employer was paying the employee for the time involved in travelling to Arsenal. In this case, the place of work was removed some distance from the centers of population, so that the job necessitated travel by some type of conveyance. So the employer furnished each inspector a pass to ride its trains as an added consideration, inducement, or incentive to him to take a job that was many miles removed from his place of residence. In view of the distant location of the place of work in this case and the cost of commuting by other conveyances, it may have been necessary for the employer to pay for travel time and to furnish transportation in order to get any one to accept this job. The plan of the railroad company, therefore, to transport the inspector aboard its own trains and to pay him for the travel time involved, was a reasonable one and one beneficial to both employer and employee.

An arrangement whereby the employer agrees to have the employment commence at the time the employee boards the train may be unusual, but it is not so unusual as to be impossible of belief, even though the employee has no duties to perform, can select another means of conveyance, is not paid for his time spent in returning home from the job, is riding a regularly scheduled passenger train, is paid by the month, and is riding on a pass. All of these elements have a bearing on the construction of the contract of employment. They are elements which can be considered in determining when the servant affixed himself to his day's work. However, they are not conclusive, and in this case in view of the testimony given by the wit-

ness Balser, only created a conflict in the evidence, which the trial court resolved in favor of the respondent.

The court could also have interpreted the evidence so as to bring Frazee within the status of an employee subject to emergency call. The witness, Balser, testified to facts indicating that inspectors were "on duty" and subject to call while on the train going to work. If this evidence is worthy of belief, then Frazee would be in the situation of other employees subject to being used in an emergency, and present where they could be called if needed. Even though Frazee testified he was not aware of the existence of such a situation, his testimony at most only raised a question of fact, which the trial court also resolved against the appellant. We are unable to say the court erred in so doing.

The judgment is affirmed, with costs to respondent.

McDONOUGH, C. J., and PRATT and WADE, JJ., concur.

WOLFE, Justice (concurring in the result).

I am not sure whether in this case it is necessary to determine whether Frazee was engaged in interstate commerce at the time of his injury if it is determined that at such time he was an employee and not a passenger. It appears that there were three sets of insurers. The plaintiff insured liability of the employer for an injury occurring in interstate work up to $5,000. Another group of insurers insured payment of a liability incurred in interstate commerce in excess of $5,000. Another group insured a liability incurred by virtue of negligent injuries to passengers. There is nothing in the record to indicate whether or not Bamberger carried insurance against liability for injuries to employees engaged in intrastate commerce.

We do not have the stipulation respecting the settlement of the claim in the record but in plaintiff's reply to the counterclaim it is alleged that the said agreement provided:

"that defendant, Bamberger Railroad Company, would compromise and settle the case of Frazee against Bamberger Railroad" and "on

behalf of other parties to the said agreement it was provided that if it shall be adjudged that the said Frazee was, at the time of his injury, engaged in the course of his employment with the defendant in interstate commerce then defendant, Bamberger Railroad, would be reimbursed to the extent of $5,000 by this plaintiff and for the balance of said payment by one group of Underwriters at Lloyd's London, and that if it should be adjudicated that Frazee was not, at the time of his injury, engaged in the course of his employment with the defendant in interstate commerce, then Bamberger Railroad Company would be reimbursed for the full amound of said payment by the other Underwriters at Lloyd's London."

Since Frazee's complaint predicated a claim for damages either for an injury suffered while working in interstate commerce or while a passenger and the claim was settled it may be that the issue which the agreement reserved for settlement was one of whether the injury occurred during a status of passenger or employee and if the latter that it must be presumed that it occurred in the employee's work in interstate commerce for such was the only claim settled respecting employment. It is very unlikely that the parties reserved the question as to whether, if the status at the time of the injury was found to be one of employee rather than passenger, the employment was inter- or intrastate commerce. For if it should be determined to be the latter none of the insuring groups here involved would have been liable. It is unlikely that the Bamberger Railroad would have paid the claim if it thought there was a possibility that in the suit for a declaratory judgment there would be permitted to be shown the fact that the injury was in intrastate commerce especially in the light of the fact that the settlement was on a claim, one arm of which was predicated on employment in interstate and not intrastate commerce. That would have left it at the mercy of an issue which might be resolved so as to exonerate all insurers. Therefore, I am inclined to hold that if it is determined that an employer-employee relationship was in being at the time of the injury it must be presumed that the Bamberger Railroad paid the claim on the assumption that the type of work in which Frazee was engaged at the time of the injury, was, by the

parties to the agreement, stipulated to be that named in the complaint—to wit, interstate in nature. In other words, the only issue was as to whether at the time Frazee was injured he was a passenger or an employee and if the latter it was assumed that he was in interstate employment. But if that is not a fair inference then certainly under the *Erie Railroad* case, Frazee carried with him during the quiescent hours of his travel a participation in both intra- and interstate work because it was a mixture or combination of work of both natures that he was traveling to perform. This makes it unnecessary to enter into the troublesome questions as to whether in a suit in which insurers and employer are the parties and the employee is not a party, the insurers or one of them could make the choice for the employee whose claim has been paid in the suppositious case where an injured employee has an opportunity for recourse under two laws, one pertaining to intrastate injuries and the other to interstate injuries or where he has recourse only in case he is injured in interstate commerce and no recourse if injured in intrastate commerce.

For the foregoing reasons I concur in the results of the prevailing opinion.