Wilbur H. **BERRETT** and Doris H. Berrett, husband and wife, Plaintiffs and Respondents,

v.

R. Michael **STEVENS**, Robert W. Denning, and Jerrold S. Jensen, Trustee, Defendants and Appellants.

No. 18905.

Supreme Court of Utah.

Sept. 27, 1984.

Jerrold S. Jensen, Salt Lake City, for defendants and appellants.

Merlin K. Jensen, Ogden, for plaintiffs and respondents.

HALL, Chief Justice:

Defendants appeal a judgment from the district court declaring a $10,000 insurance payment to be the property of the plaintiffs and enjoining the defendants from foreclosing on a trust deed. We affirm.

On September 10, 1979, plaintiffs sold property in Weber County, Utah, to defendants R. Michael Stevens and Robert W. Denning and to Wayne J. Burningham and Michael V. Stephens. The property was sold under a uniform real estate contract for a purchase price of $315,000. Plaintiffs agreed to convey title to the property to the buyers by warranty deed when the contract balance reached $208,400 and to take back a note and a second trust deed. That event and the transfer of the deed took place on November 23, 1979. At the same time, plaintiffs subordinated their security interest to that of Murray First Thrift & Loan Company (MFT), which had loaned the buyers $115,000 to improve the property. The improvements were never made.

As a condition of obtaining the improvement loans and to insure repayment, MFT required the four buyers to each obtain a credit life insurance policy. MFT calculated the premiums on the policies, obtained the policies from American National Insurance Co., and added the premiums to the loan balance, making a total loan balance of $120,000.

In early 1981, Burningham and Stephens quitclaimed their interest in the property to defendants Stevens and Denning. In October, 1981, Stephens died in an accident. Proceeds of $20,000 from his life insurance policy were credited to the loan balance owed to MFT by the buyers.

At the time of the initial loan, the buyers believed that each life insurance policy had been written for $30,000 (a loan of $120,000 ÷ 4 buyers = $30,000) and that the premiums reflected that amount. MFT maintained that each policy had been written for the amount of $20,000. Defendants made a claim against MFT for the additional $10,000 they believed was owed under the insurance policy.

At the same time the insurance proceeds dispute was progressing, defendants became delinquent in making the payments to plaintiffs required by the uniform real estate contract. In order to limit their liability, defendants began to negotiate with plaintiffs concerning the possibility of plaintiffs taking a deed from defendants in lieu of foreclosure. Plaintiffs subsequently took back a deed in lieu of foreclosure, subject to the mortgage owed to MFT and subject to an agreement between the parties dated November 30, 1981.

There were several points to the agreement. First, plaintiffs agreed to accept a quitclaim deed from defendants in lieu of foreclosure. In so doing, plaintiffs released defendants from all obligations under the uniform real estate contract and assumed the promissory notes for repayment of the improvement loans from MFT. Second, defendants agreed to assign to plaintiffs the balance receivable from a sale of a portion of the property to third parties. Third, plaintiffs acknowledged that a dispute existed between defendants and MFT regarding the amount payable on Stephens' life insurance policy and that defendants

had made a claim against MFT for the disputed amount. In the event defendants' claim was successful, plaintiffs agreed to pay defendants the amount of the disputed insurance proceeds. (It is this provision that is the subject of this action.)[1] As security for the payment, plaintiffs executed a trust deed on the property in favor of defendants for the amount of $10,000.

In March, 1982, MFT credited the mortgage at MFT with an additional $20,000. MFT explained that the premiums paid by each buyer warranted a policy amount of $40,000 rather than the $30,000 expected by the defendants or the $20,000 originally claimed by MFT.

Plaintiffs thereupon paid defendants $10,000. Defendants, however, claimed that under the agreement they were owed the entire $20,000. When plaintiffs refused to pay defendants the additional $10,000, defendants instituted foreclosure proceedings on the trust deed. To stay those proceedings, plaintiffs filed suit in district court, seeking an injunction against the foreclosure and a declaratory judgment as to the disposition of the second $10,000 under the terms of the agreement. The trial court permanently enjoined foreclosure of the trust deed and declared the additional $10,000 to be the property of plaintiffs.

The purpose of the Declaratory Judgment Act, U.C.A., 1953, § 78–33–1, *et seq.*, is to permit examination of legal documents and statutes to determine questions of construction or validity arising under such instruments.[2] Courts may render declaratory judgments in conjunction with any other appropriate relief.[3] Declaratory judgment proceedings to determine the construction of a contract are legal in nature rather than equitable.[4] Therefore, if there is substantial competent evidence to support the findings of the trial court,

---

1. The pertinent sections of the 1981 agreement are as follows:

   3. BUYERS DISPUTE WITH MFT: Seller acknowledges that a dispute presently exists between Buyers and MFT regarding the dollar amount of a credit life insurance policy issued on the life of Michael V. Stephens, an original Buyer and obligor on the two Notes at MFT. The basis of the dispute is as follows:
   a. The four original Buyers under the Uniform Real Estate Contract of September 10, 1979 applied for and obtained two loans for the purchase of said property totaling $120,000 from MFT in which MFT requested a credit life insurance policy on each of the obligors in the amount of $30,000.
   b. MFT wrote the credit life insurance policies on each of the obligors with American National Insurance Company (hereinafter referred to as Insurance Company).
   c. Michael V. Stephens was killed in October, 1981.
   d. Insurance Company claims the credit life insurance policy on Michael V. Stephens was only in the amount of $20,000 and has accordingly paid to MFT on said loans the amount of $20,000.
   e. Buyers believe that the obligation of Insurance Company and/or MFT is $30,000 on the credit life insurance policy for Michael V. Stephens.
   f. Buyers intend to make claim against Insurance Company and/or MFT for the balance of $10,000.

4. PAYMENT TO BUYERS IN EVENT DISPUTE RESOLVED IN BUYERS FAVOR: In the event Buyers' claim against Insurance Company or MFT is resolved in Buyers favor and Seller benefits thereby, either through the disputed amount being applied against the loans at MFT or through direct payment to Seller, then Seller agrees to pay said same amount to Buyers. In addition, Buyer and Seller agree to the following:
   a. Seller agrees to execute a Trust Deed on said property, in favor of Buyers, in the amount of $10,000, as security for the above-described payment to Buyers.
   b. Seller shall make payment to Buyer within 15 days of receiving the payment or of having it applied against said Notes at MFT.
   c. Buyers shall release said Trust Deed immediately upon receipt of payment from Seller or within 10 days of the final resolution of Buyers dispute with Insurance Company and/or MFT, including all lawsuits and appeals, if any.
   d. Said Trust Deed shall be executed simultaneous with Buyers executing of their Quit Claim Deed in favor of Sellers.

2. *Lindon City v. Eng'rs Constr. Co.,* Utah, 636 P.2d 1070, 1073 (1981).

3. *Whitmore v. Murray City,* 107 Utah 445, 154 P.2d 748 (1944); *Gray v. Defa,* 103 Utah 339, 135 P.2d 251 (1943).

4. *C & B Livestock, Inc. v. Johns,* 273 Or. 6, 539 P.2d 645 (1975).

those findings will be affirmed.[5]

■ In his memorandum decision in this case, the trial judge found:

The $10,000.00 in controversy was clearly unanticipated by either of the parties. What was anticipated is that there would be a payment, $10,000.00 of which was to be paid to defendants. It was further anticipated that plaintiff would assume the liability to Murray First Thrift whatever it was. The additional $10,000.00 in legal effect was to reduce the amount of the Murray First Thrift liability. It seems to follow, therefore, that the additional $10,000.00 is to inure to plaintiff's benefit.

The evidence in this case supports those findings.

The provisions of the agreement dealing with defendants' dispute with MFT are clear. Defendants were claiming an additional $10,000 in insurance proceeds from MFT[6] and expected to receive only $10,000. Both parties agreed that no additional payment was expected. To interpret the term "the disputed amount" in section 4[7] as defendants suggest, to mean whatever additional proceeds were received, would be to ignore the clear intent of the agreement read in its entirety. Defendants bargained with plaintiffs for inclusion of sections 3 and 4 in the agreement and expected thereby to receive $10,000. That is exactly what they did receive.

■ Defendants further argue that the payment of the additional $10,000 was an unforeseen subsequent occurrence and ask this Court to ascertain what the parties' intent would have been if they had anticipated the additional payment. In effect, defendants are asking this Court to reform the contract. However, the record indicates that at trial the defendants asked

only for an interpretation of the contract that would require the additional $10,000 to be paid to defendants. Failing that interpretation, defendants contend that the plaintiffs would be unjustly enriched if allowed to keep the unanticipated $10,000. Defendants nowhere raised, by implication or directly, the issue of unforeseen subsequent occurrence or contract reformation. Where an issue is not raised in the trial court, this Court will not consider it on appeal.[8]

■ Defendants did raise the issue of unjust enrichment below. Unjust enrichment occurs whenever a person has and retains money or benefits that in justice and equity belong to another.[9] Thus, in order for a claim based on unjust enrichment to be successful, there must be (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.[10]

■ It must first be determined whether a benefit has been conferred on plaintiffs by defendants. Defendants in effect contend that the efforts expended by them in making the claim for additional insurance proceeds and pursuing negotiations with MFT and the insurance company were beneficial services to plaintiffs. Further, defendants claim they paid the premium on the policy and as such should be the beneficiaries.

There is little doubt that plaintiffs did receive some benefit from defendants' action. However, the mere fact that a person benefits another is not by itself sufficient

5. *London Guarantee & Accident Co. v. Frazee,* 112 Utah 91, 185 P.2d 284 (1947).

6. *See* # 3, footnote 1.

7. *See* # 4, footnote 1.

8. *Bangerter v. Poulton,* Utah, 663 P.2d 100 (1983).

9. *L & A Drywall, Inc. v. Whitmore Constr. Co., Inc.,* Utah, 608 P.2d 626, 630 (1980); *Baugh v. Darley,* 112 Utah 1, 184 P.2d 335 (1947).

10. *See* W. Jaeger, Williston on Contracts § 1479 (3d ed. 1970).

to require the other to make restitution.[11] The value of services performed by a person for his own advantage and from which another benefits incidentally are not recoverable.[12]

Defendants did make the claim for additional insurance proceeds. They pursued the claim with the intention that the disputed amount would be applied to the loans at MFT to defendants' benefit. Defendants continued to pursue the claim after plaintiffs took back the deed in lieu of foreclosure and assumed the loans at MFT because the agreement between the parties specifically stated: "In the event Buyers' claim against Insurance Company or MFT is resolved in Buyers' favor and Seller benefits thereby, either through the disputed amount being applied against the loans at MFT or through direct payment to Seller, then Seller agrees to pay said same amount to Buyers."

██ Defendants received the $10,000 in cash they bargained for. The fact that plaintiffs benefitted incidentally by defendants' pursuance of the claim against MFT does not make the $10,000 credited against the loan amount at MFT recoverable in cash from the plaintiffs.

Further, there is no evidence to sustain a finding that plaintiffs retained $10,000 that in equity belonged to defendants. Defendants were the parties who signed the uniform real estate contract and who sought and obligated themselves to repay the improvement loans from MFT. When defendants defaulted on the uniform real estate contract, by its terms plaintiffs had the option of foreclosing on the contract and pursuing additional judgment against the defendants. Because plaintiffs had other buyers for the property, they opted instead to accept a deed in lieu of foreclosure from the defendants and to assume the obligation to MFT to repay the improvement loans, even though the proceeds from the loans had not been used to make improvements to the property. In order to expedite the transfer, plaintiffs agreed to pay defendants $10,000 in cash if defendants' pursuance of the claim against MFT resulted in application of the insurance proceeds against the loan balance. To insure the payment, plaintiffs gave defendants a trust deed in the amount of $10,000, the deed to be released upon payment of the $10,000. When MFT applied $20,000 to the loan balance, plaintiffs promptly paid defendants $10,000 in cash as per the agreement. Defendants, however, refused to release the trust deed.

Under these circumstances, the retention of the incidental benefit conferred on plaintiffs by defendants' pursuance of the claim against MFT is not inequitable. To the contrary, it would be inequitable under these circumstances to require plaintiffs to produce an additional $10,000 in cash. Defendants have therefore failed to prove that plaintiffs would be unjustly enriched by retention of the $10,000 credit on the improvement loans from MFT.

The judgment of the district court is affirmed. Costs to plaintiffs.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., dissents.

---

11. *Darley, supra* note 9, at 337.

