## SALABRIN *v.* ANN ARBOR RAILROAD CO.

1. Appeal and Error—New Trial—Weight of Evidence—Saving Question for Review.

In an action for personal injuries by an employee against a railroad company, where no motion was made for a new trial upon the ground that the verdict for plaintiff was against the weight of the testimony, that question is now foreclosed, and it is assumed on error that the plaintiff's contention that he was under the express command of the foreman when injured is true.

2. Master and Servant—Existence of Relation—Personal Injuries After Working Hours—Federal Employers' Liability Act.

Where plaintiff, an employee of defendant railroad company, under the orders of the foreman, went with the latter and others on a hand car to a toolhouse to obtain a "jack," which was to be used in the work, and was injured by a collision with a locomotive running without a headlight while returning to his bunkhouse after the usual quitting time, the relation of master and servant existed between plaintiff and defendant, rendering the latter liable under the Federal employers' liability act (4 U. S. Stat. 1913, § 8657, 35 U. S. Stat. 65).[1]

3. Same—Railroads—Failure to Have Headlight on Locomotive—Statute—Penalty—Negligence.

In the absence of evidence rendering applicable the provisions of the proviso in Act No. 77, Pub. Acts 1913, 2 Comp. Laws 1915, § 8378 *et seq.*, allowing the operation of a locomotive to its destination when the headlight became defective while in transportation, it was negligence, as matter of law, to operate a locomotive after dark without a headlight a distance of 47 miles; although said proviso might relieve defendant of the penalty provided in the act, if applicable, such operation might still be negligent.

4. Same—Duty to Employee—Negligence—Headlight.

The use of a headlight on a locomotive, whether prescribed by statute or demanded by good railroading, is as much

[1] On constitutionality, application and effect of Federal employers' liability act, see notes in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.

for the benefit and protection of employees· of the railroad company as for the public.

5. SAME—INTERSTATE COMMERCE—FEDERAL EMPLOYERS' LIABILITY ACT.

Track repairs and maintenance are essential to interstate commerce, and an employee of a railroad company engaged therein is entitled to recover under the provisions of the Federal employers' liability act for injuries received while so employed. *Holmberg* v. *Railway Co.*, 188 Mich. 605 (155 N. W. 504).

Error to Monroe; Gilday, J.   Submitted October 10, 1916.   (Docket No. 100.)   Decided December 22, 1916.

Case by Joseph Salabrin against the Ann Arbor Railroad Company for personal injuries.   Judgment ·for plaintiff.   Defendant brings error.   Affirmed.

*Gustavus Ohlinger* and *Alex L. Smith,* for appellant.

*Sol. Blumrosen,* for appellee.

On October 7, 1914, the plaintiff was a member of a repair gang in the employ of the defendant railroad company.   This gang was on that day engaged in resurfacing track between Dundee and Lulu, two stations on the defendant's railroad, lying south of Ann Arbor.   The gang lived and slept in a car provided for that purpose, which on the day in question occupied a side track at Lulu, some three or four miles south of the point where they were at work.   The gang consisted of about 20 men.

It is the claim of plaintiff that about the hour of 3 or 3:30 o'clock in the afternoon of the day in question, he was ordered by his foreman to accompany the foreman, the assistant foreman, and five others from the point where they were working north to the village of Dundee, there to procure a "jack" from a toolhouse on defendant's right of way, which "jack" was to be used in the work.   He testified that he and his seven

companions boarded the hand car and proceeded north to the toolhouse, which was located about 750 feet south of the bridge over the Raisin river, which seems to run south of Dundee; that they unlocked the toolhouse and placed the "jack" upon the hand car, when he and two of his companions were ordered by the foreman to remain with the hand car, and that the foreman and the other men went to the village of Dundee, which was distant about a mile from where they had taken the hand car from the track; that the foreman and the other men were gone about an hour and a quarter, and upon their return the car was replaced upon the track, and they started on the return trip. By this time it was approximately 6:30 p. m., standard time, and was dark. No light was exhibited by the plaintiff and his companions upon the hand car. While proceeding south toward Lulu and after they had progressed about a mile or a mile and a half, they were overtaken by a train, likewise running south, and in the collision which followed plaintiff received injuries for which he brought suit.

The action is planted under section 8657, 4 U. S. Comp. Stat. 1913 (35 U. S. Stat. 65), the so-called Federal employers' liability law. The sole negligence of the defendant upon which the case was permitted to go to the jury was that at the time of the accident the defendant was operating its engine without a headlight. On behalf of the defendant, the foreman and assistant foreman swore positively that the trip to Dundee was undertaken after 5 o'clock, which was the usual quitting time, and that on the day in question work for the defendant had been suspended. Their testimony was to the effect that as they desired to go to Dundee for supplies of some kind, they offered to permit the plaintiff and such of his companions as desired to go with them; that no order was given to either the plaintiff or any of his companions with ref-

erence to a "jack," and no stop was made at the tool-house; that they went immediately to the south side of Monroe street, where they took the hand car from the track, and the entire party went up town a distance of a mile or more; that they stayed in the village for about an hour, during which time more or less drinking was indulged in by various members of the party. At the expiration of this time they all returned to the car, replaced it upon the track, and started south, and were overtaken by the train when they had proceeded about a mile and a half in that direction. Defendant admitted that the track upon which plaintiff was employed to work was used solely for interstate commerce, and further admitted that at the time of the collision betwen the train and the hand car the engine was being operated without a headlight. Further testimony on behalf of defendant showed without contradiction that at the city of Ann Arbor the chimney of the headlight had become broken, and that an ordinary white lantern was thereupon suspended from the front end of the locomotive, and the train proceeded upon its way to Toledo, a distance of 47 miles. At the time of the collision neither the engineer nor the fireman knew that the engine had come into collision with the hand car. The train proceeded south from Dundee to Samaria, a distance of 11 miles, where it stopped at the depot; there the engineer, hearing a noise, examined the front end of his engine, and found the plaintiff lying upon the pilot.

The trial judge in submitting the case to the jury instructed them that if they found that the plaintiff went to Dundee for his own purposes, he could not recover, but that if he took up his position upon the hand car as a result of an order from the foreman, in order to get the "jack," the relation of master and servant would be created, and he might recover.

The jury was further instructed that the defendant

was guilty of negligence as a matter of law in operating its engine on the night in question without a headlight, and that the plaintiff was likewise guilty of negligence as a matter of law in operating the hand car after dark upon defendant's track without a light. Upon this question the court further charged:

"Then in estimating the damages to which you consider the plaintiff entitled to, you are to consider the negligence of the plaintiff in riding on this road, on this car, without any light, with the total negligence which caused the accident, the negligence of the railroad company in operating this train without a light, and you must exclude from your verdict such portion or proportion of the total damages as the contributory negligence of the plaintiff bears to the total negligence which caused the accident."

Plaintiff recovered a verdict of $750. No motion for a new trial was made by defendant.

In this court defendant and appellant argues the case under the following heads:

(1) The plaintiff was not, at the time of the accident, an employee of defendant, and therefore is not entitled to recover in this case.

(2) There was no breach of any statutory duty to plaintiff in not having a headlight on the engine.

(3) Even if plaintiff were considered as being in the employ of defendant at the time of the accident, there was no duty owed him in respect to the headlight.

(4) The plaintiff was not employed in interstate commerce at the time of his injury, and therefore (his whole case being bottomed on the Federal statute) he cannot recover.

BROOKE, J. (*after stating the facts*). 1. Under the charge of the court which presented that question fairly to the jury, we must assume that the jury determined that the plaintiff undertook the journey from the point on the track where he was at work to the village of Dundee at the express command of the fore-

man, and for the purpose of obtaining a "jack." As no motion was made for a new trial upon the ground that the verdict was against the weight of testimony, that question is now foreclosed, and we must now assume that the plaintiff's version of the transaction is the truth. On behalf of defendant, however, it is contended that, even assuming the plaintiff to have told the truth with regard to the inception of the journey, it is uncontradicted upon this record that the quitting time was 5 o'clock. It is therefore urged that when 5 o'clock came plaintiff and his companions were at liberty to go in any direction their several fancies might dictate, and that if plaintiff and his companions chose rather to wait for the departure of the hand car from Dundee in order to secure a ride from that point to Lulu, where their sleeping and living car was located, it should be held that in so doing they were acting for their own pleasure and convenience, and not as employees of the defendant company. We are unable to agree with this contention. It seems to us that it would make no difference whether the journey was undertaken before or after the hour when plaintiff usually quit his daily labor, provided it was so undertaken at the command of the master through the foreman and for the benefit of the master. If, as plaintiff testifies, the foreman instructed him to accompany the party for the purpose of obtaining the "jack," and he remained with the hand car after obtaining the "jack" at the command of his foreman until the return of the party from Dundee, and then entered upon the return trip with the rest of the party, we think it should be held that at the moment of collision he sustained the relation of servant to the defendant company as master. The case of *Winnie* v. *Railway Co.,* 160 Mich. 334 (125 N. W. 351), relied upon by defendant is not controlling.

2. On this branch of the case defendant relies upon

the statute (Act No. 77 of the Public Acts of 1913, 2 Comp. Laws 1915, §§ 8378-8380), which provides that all locomotives shall be equipped with lights of a certain character. Section 2 of the act contains the following proviso:

"*Provided,* That should a headlight on any locomotive become defective when being used in transportation, it shall not be considered a violation of the provisions of this act to continue the operation of said locomotive to its destination."

In this connection it is said on behalf of defendant that the record shows that the chimney of the headlight was broken at Ann Arbor, and that therefore the engine was being operated to its destination in strict conformity with the proviso of the statute. There are, it seems to us, two answers to this contention. In the first place, defendant failed to show that the train, a way freight was not made up at Ann Arbor. If the train started at Ann Arbor, and so far as this record discloses it may have done so, the operation of the locomotive between Ann Arbor and Toledo without a headlight could certainly not be held to fall within the proviso of section 2 of the statute. *Secondly,* the statute is penal in character; and, while the operation of a locomotive without a headlight, under circumstances falling within the proviso of section 2, would relieve the defendant company of the penalty provided in the act, such operation might still be highly negligent on the part of the defendant. It appeared from the testimony of the fireman that there was a switch engine at Ann Arbor, and that said switch engine had a headlight with a chimney. He said:

"We did not have time to take that chimney because we had orders to go on."

Under the circumstances as disclosed by the record in this case, we are of opinion that the operation of

the locomotive after dark without a headlight from Ann Arbor to Toledo, a distance of 47 miles, was, as the learned circuit judge charged the jury, negligent as a matter of law.

3. Under this head defendant claims that, even though the plaintiff was at the time of the accident in the employ of the defendant company, the company owed him no duty in respect to the headlight. This contention is based upon our holding in the case of *Lepard* v. *Railroad Co.*, 166 Mich. 373 (130 N. W. 668, 40 L. R. A. [N. S.] 1105), where we held that the company owed no duty to a section hand to sound the customary crossing whistle. We do not think that the use of a headlight, whether prescribed by statute or demanded by practice in good railroading, should be held to be for the benefit of the public only, and not for the benefit of the employees of the railroads. Such employees are obliged constantly to be upon the right of way and in the yards of the railroad companies, and after dark the use of a headlight is to them one of the highest guaranties of safety to life and limb.

4. We have so recently examined this question that we content ourselves with reference to the late case of *Holmberg* v. *Railway Co.*, 188 Mich. 605 (155 N. W. 504).

Judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. PERSON, J., did not sit.