**Vernon E. LEEK, Plaintiff,**

v.

**The BALTIMORE & OHIO RAILROAD COMPANY and Yellow Cab of Moundsville, Inc., Defendants.**

**Clyde BROWN, Plaintiff,**

v.

**The BALTIMORE & OHIO RAILROAD COMPANY and Yellow Cab of Moundsville, Inc., Defendants.**

**Civ. A. Nos. 940–W, 941–W.**

United States District Court
N. D. West Virginia,
at Wheeling.
Jan. 5, 1962.

CHARLES F. PAUL, District Judge.

At the trial of these consolidated cases, the court directed verdicts in favor of both plaintiffs and against both defendants, and the jury returned verdicts in the amount of $5,950.00 for Vernon Leek and $8,800.00 for Clyde Brown.

The defendant, The Baltimore & Ohio Railroad Company, has moved for judgment notwithstanding the verdicts, in accordance with its motion for directed verdicts, and in the alternative, for a new trial. The defendant, Yellow Cab of Moundsville, Inc., has moved for a new trial.

On October 8, 1958, at about 1:00 o'clock P.M., the plaintiffs, who are employees of the B. & O., with three fellow employees, were passengers in a taxicab owned by the defendant, Yellow Cab, and driven by its employee, McCardle, in the course of his employment, proceeding north on West Virginia Route 2 in the southern part of the Town of Glendale, when the taxicab jumped the eastern curb on the four-lane highway and struck a wooden pole, carrying electric lines, which was located approximately one foot east of the curb. The taxicab overturned and the plaintiffs were injured.

No other traffic interfered with the operation of the taxicab, and there is no evidence of mechanical failure related to the cause of the accident. The only permissible inference from the evidence is that the accident was due to driver error or inattention.

The B. & O. employees were being transported, after the completion of the active duties of their day's work as a switching crew, from the Solvay Chemical Plant some nine miles south of the City of Moundsville, to the Benwood Yards of the B. & O. north of Glendale, where they were to sign off for the day. The switching crew of five men had been relieved at the Solvay Plant by another shift, which had been transported in the same taxicab driven by the same driver from the Benwood Yards to the Solvay Plant.

The defendant, Yellow Cab of Moundsville, Inc., is incorporated and licensed by

Jack E. Feinberg, Richter, Lord & Levy, Philadelphia, Pa., Wesley R. Tinker, Jr., Wheeling, W. Va., for plaintiffs.

Russell B. Goodwin, Wheeling, W. Va., for defendant, Baltimore & O. R. Co.,

Sam E. Schafer, Thomas B. Miller, Wheeling, W. Va., for defendant, Yellow Cab of Moundsville, Inc.

the State of West Virginia as a common carrier, for hire, of passengers by taxicab, and there is no evidence that the B. & O. has any connection with the Cab Company or with its employees, other than the arrangement hereinafter noted.

Several years prior to the accident, the B. & O. by oral agreement with a predecessor of the Cab Company, had arranged for the shuttling of train crews between the Benwood Yards and the Solvay Plant, a total distance of some twelve miles. The taxicab would pick up one crew at the Benwood Yards, after the crew had checked in, and transport them to Solvay to commence the day's active switching operations, and pick up the crew that had been relieved and take them back to Benwood. On occasion, at the request of an employee being transported, the driver would drop him off at some point on the route other than Benwood. The taxi charge for each round trip was $8.00, plus a charge for waiting time in excess of one-half hour. The total of the daily charges by the taxicab would be paid monthly by the B. & O. Upon acquisition of the predecessor Taxicab Company by the defendant, Yellow Cab, the arrangement was continued, apparently without any formal renegotiations.

On the day of the accident, McCardle, who had been an employee of the Taxicab Company for some months, began his duties at 7:00 A.M. He was working a twelve-hour shift. The evening before he had accompanied his wife and sister to a doctor's office in Wheeling, where his sister was undergoing treatment. The records of the office building in Wheeling show that McCardle entered the office building at 8:15 P.M. and left at 2:35 A.M.

The railroad company's motion is based upon the "independent contractor" defense. To this, the plaintiffs reply that, under a proper interpretation of Section 1 of the F.E.L.A. (45 U.S.C.A. § 51), the taxicab company was one of the "agents" of the railroad, for whose negligence the railroad is liable, citing, inter alia, Sinkler v. Missouri Pacific Railroad Co., 1958, 78 S.Ct. 758, 356 U.S. 326, 2 L.Ed.2d 799.

In the Sinkler case, the railroad was held liable to its employee who was injured when the car, in which he was employed as a cook, was involved in a collision caused by the negligence of a switching crew of the "Belt" Railroad, which, under contract with the Missouri Pacific, was switching the car in the station at Houston, Texas. The Missouri Pacific had a substantial stock interest in the Belt, but no special emphasis seemed to be placed upon this factor. The court enunciated (at page 331 of the U. S. Report, at page 763 of 78 S.Ct.), that "when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA."

The question here would seem to be whether the transportation of employees, while the employees are in the course of their employment, between a point where they are required to check in and out, and a point where they are required to begin or terminate their active work, is an "operational activity".

Certainly, there must be many services performed by others under contract with a railroad, which are incidental or even necessary to the corporate purposes of the railroad, which are not "operational activities" within the meaning of those words as employed in the Sinkler case. Just where the line should be drawn, I am neither prepared nor called upon to specify. However, I do not believe that the line should be drawn short of the activities which the taxicab company was performing for the railroad in this case.

The Supreme Court points out in the Sinkler case that the congressional enactment of the F.E.L.A. and its departure from the common-law rules of liability "was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." It seems to me that one of the exigencies of railroading is the transportation of employees, while

on the job, between more or less distant points and the subjection of the employees to the risk of injury inherent in such transportation. While the necessity of transporting workers is not unique to railroading, it is one of the characteristics of the business. It would seem to be consonant with the spirit of the F.E.L.A. that the employer should bear the risk of negligent injury to the employee while exposed to this risk. It has been my observation that, in recent years, most court exposition of the rule that *respondeat superior* does not apply to the acts of an independent contractor, is in connection with an exception to the rule. The Supreme Court has announced another exception to the rule in its interpretation of the meaning of the word "agents", as used in the F.E.L.A. In conformity with the spirit and purposes of this announced exception, it would seem that whether the railroad requires its employees to do on-the-job travel by use of the railroad's own facilities or upon facilities for which the railroad contracts with others, should not make the vital difference between liability and nonliability.

The only direct authority to the contrary cited by any of the parties is the oral opinion of visiting District Judge Edward T. Gignoux, sitting in the Western District of Pennsylvania, supporting his direction of a verdict in favor of the defendant, in the case of Theodore F. Black v. Baltimore & Ohio Railroad Company (Civil No. 14719). I have been furnished with a transcript of Judge Gignoux' expressions of opinion. He would confine the Sinkler case to its facts, in which the movement of rolling stock was involved. He would not "extend" the holding to the movement of the railroad's employees, which I regard as just as essential to the operational activities as the movement of equipment. The injury to the employee is equally painful and causes just as much economic loss whether he is on a piece of railroad equipment being operated by another, or is in a taxicab, bus or truck owned by another and chartered by the railroad for its purposes. It is to be noted that we are not here concerned with the usual case of the business traveler making occasional or even regular use of public transportation upon an expense account. This is the day after day, week after week, contract carriage of groups of employees, on company time, between fixed points. It is an integral and continuing part of the railroad's total operations. In this respect, the instant case may be distinguishable, on its facts, from the Black v. B. & O. case. The portion of the transcript with which I have been furnished does not detail the facts sufficiently for me to be able to determine this.

The obligation of a railroad to its employees created by the F.E.L.A. is imposed (in the words of the opinion in the Sinkler case), "not because the employer is himself to blame, but because justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered." One may quarrel with the congressional policy, as found and determined by the Supreme Court, in shifting the burden of economic loss caused, in whole or in part, by the negligence of someone acting in furtherance of the railroad's enterprise, from the individual to the enterprise, but the trend of the Court's decisions is too clear for this district court to disregard it. With all deference to the clearly stated reasons incorporated in the opinion of Judge Gignoux, I must disagree.

The grounds of the motion for a new trial by the defendant, Yellow Cab of Moundsville, Inc., present no assertions of prejudicial error which merit discussion. The defendants' motions may be overruled and denied and judgments entered upon the verdicts.

At the trial, by a stipulation, the court reserved from submission to the jury, the issue of primary-secondary liability as between the two defendants. Under the circumstances here present, it is apparent that the active or primary negligence is that of the Cab Company, and that

the Railroad is secondarily liable only because of the provisions of the Federal Employers' Liability Act. The Baltimore & Ohio Railroad Company shall have judgment over against Yellow Cab of Moundsville, Inc., for any portions of the judgments which it may be required to pay.