Leonard E. WILLIAMS, Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, INC., et al., Defendants.

Civ. A. No. 90–1491–A.

United States District Court, E.D. Virginia, Alexandria Division.

July 26, 1991.

summary judgment must therefore be granted.

Walsh, Kathleen Grace, Alexandria, Va., for Leonard E. Williams.

George William Marget III, Williams, Mullen, Christian and Dobbins, Richmond, Va., for Norfolk Southern Ry. Co., Inc., and National R. Passenger Corp.

Julia B. Judkins, Lewis, Trichilo & Bancroft, Fairfax, Va., for Catlett Volunteer Fire Co., Inc. and Kevin A. Bell.

## MEMORANDUM OPINION

ELLIS, District Judge.

The Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. ("FELA" or the "Act") gives railroad workers a remedy against the railroad for injuries sustained in the course of their employment as a result of the negligence of the railroad or its agents. But injuries incurred while "commuting" to or from work are not sustained in the course of employment. Thus courts, applying the "commuter rule", have consistently denied the FELA remedy to workers injured while commuting. This case presents two questions. The first is whether the commuter rule bars a maintenance-of-way repairman from recovery under FELA where his injuries were sustained en route home via optional transportation provided by Amtrak.[1] Next, because FELA liability is triggered only by the negligence of the railroad or its agent, the second question is whether Amtrak acted as defendant Norfolk Southern's agent in furnishing transportation to its employees, pursuant to a contract with the railroad.

For the reasons set forth here, the Court concludes that plaintiff was commuting home when he was injured in an Amtrak derailment and hence, the injury occurred outside the course of plaintiff's employment. The Court also concludes that Amtrak's alleged negligence cannot be imputed to Norfolk Southern by means of agency. Norfolk Southern's motion for partial

## FACTS

The dispositive facts are not disputed. Norfolk Southern employed plaintiff to repair railway tracks at designated work sites covering a region from Atlanta, Georgia to Alexandria, Virginia. On Sunday, September 24, 1989, plaintiff was scheduled to report to work at a site in the vicinity of Alexandria. His journey to the work site consisted of three segments: (i) from his home in Asheville, North Carolina to Spartanburg, South Carolina; (ii) from Spartanburg to Alexandria; and (iii) from Alexandria to the designated nearby work site. Norfolk Southern required no specific mode of travel for the first two legs of the trip. Plaintiff and his fellow workers were permitted to choose their own means of transportation for these legs. For the first segment, plaintiff chose to travel by personal auto. On other occasions, he had also used personal auto for the second leg. On this occasion, however, he chose Amtrak for the second leg. The fare was paid by Norfolk Southern. He was joined on Amtrak by three other track maintenance employees who had chosen to travel by train. Other track maintenance employees assigned to the same job had selected other means of travel to Alexandria. But all employees were obligated to assemble at Alexandria. Once there, the group was transported to the work site by way of rail sidecar. The mode of travel for this segment was required. No other choice was allowed. Plaintiff, an hourly employee, was not compensated for the travel time incurred during the first and second segments of his trip. His hourly compensation only began with the third leg, the rail sidecar trip from Alexandria to the work site.

Plaintiff's return trip home involved the same three legs in reverse. Thus, on the evening of September 28, 1989, plaintiff again elected to return home from Alexandria via Amtrak. As was true for his trip to the work site, plaintiff performed no railroad work during the Alexandria to

---

1. The National Railroad Passenger Corporation is commonly referred to as "Amtrak".

Spartanburg segment of the trip. Nor did he receive any compensation from Norfolk Southern for this leg. On this leg, he was just one of the more than two hundred passengers on the Amtrak train when it collided with a firetruck and derailed at a crossing in Virginia, thereby causing plaintiff's injuries.

## ANALYSIS

■ Analysis properly begins with FELA, which establishes a right of action for employees of common carriers injured within the scope of their employment by the negligence of their employer or the employer's agent.[2] Enacted "to enlarge the remedy of railway employees injured as a result of the hazards incident to their work",[3] the Act eliminates the employer's common law defenses of assumption of risk and contributory negligence. "[FELA] cases today rarely [present] more than the single question whether negligence of the employer played any part, however small, in the injury". *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957); *see also Tiller v. Atlantic Coast Line R.R.*, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943). Recovery under FELA requires a railway employee injured in transit to or from a job site to demonstrate: 1) "that the [travel] was taken in the course of the [plaintiff's] employment, and 2) that the [transport company] was related to the railroad and its work in such a way as to cause the railroad to be liable for the negligence of the [transporting company]". *Thomas v. Grigorescu*, 582 F.Supp. 514, 516 (S.D.N.Y.), *aff'd.*, 751 F.2d 371 (2d Cir.1984) (Table affirmance).[4] Both requirements must be met. *See id.*

**2.** The FELA provides in pertinent part as follows:

Every common carrier by railroad while engaging in commerce between any of the several states ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... such injury resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or insufficiency, due to its negligence, in cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

In this case, plaintiff meets neither; he has failed to establish either that his injury occurred within the scope of his employment, or that Amtrak was the agent of employer Norfolk Southern.

## I. Scope of the Employment—The Commuter Rule

■ The FELA is of limited application; it "protects employees only if they are injured within the scope of employment". *Moore v. Chesapeake & O. Ry.*, 649 F.2d 1004, 1008 (4th Cir.1981) (*citing Getty v. Boston & Maine Corp.*, 505 F.2d 1226 (1st Cir.1974)). Consistent with this limitation, courts have long held that railway employees injured in transit to or from work are commuting, and hence not within the scope of their employment. This settled rule, known colloquially as "the commuter rule", is well illustrated by *Sassaman v. Pennsylvania R.R.*, 144 F.2d 950, 955 (3d Cir. 1944). There, a commuting dispatcher, injured while stepping off a railway platform, was held to be outside the scope of his employment for purposes of recovery under FELA. In reaching this conclusion, the Third Circuit noted that

where the employee having completed or not yet having undertaken his work for the day and not being under any direction or compulsion from his employer as to his mode of travel to and from work, utilized, of his own volition, the employer's regular passenger train [gratis] ... he was held not to be in the performance of his employment, while so travelling, but a passenger and as such, entitled to the care due by a common carrier to a passenger for hire.

45 U.S.C. § 51.

**3.** *Kress v. Long Island R.R.*, 526 F.Supp. 856, 859 (S.D.N.Y.1981) (*quoting Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir.1959)).

**4.** In *Thomas*, although the accident arose in the course of the injured worker's employment, the court held that the railroad was not liable because the cab company that operated the cab in which the employees were traveling was not the railroad's agent.

The case at bar fits this formula. In traveling on Amtrak to Alexandria, plaintiff, like the claimant in *Sassaman*, had not yet "undertaken his work for the day". Similarly, plaintiff, in traveling on Amtrak from Alexandria to Spartanburg, had ceased his work for the day; he performed no employment duties while on Amtrak and received no compensation for his time.[5] Further, like the claimant in *Sassaman*, plaintiff was under no "direction or compulsion from his employer as to his mode of travel"; he chose Amtrak "of his own volition". *Id.*[6] That Amtrak was gratis to plaintiff is not significant, just as it was not significant in *Sassaman* that claimant's choice of travel there, a passenger train, was gratis to him. And just as the case at bar fits the *Sassaman* factual formula, so, too, is it consistent with the commuter rule's rationale. The justification for the rule's limitation of FELA coverage is the employer's lack of control over the risks associated with commuter travel. By limiting FELA to injuries suffered by plaintiff "while he is employed", Congress chose to limit FELA's additional burdens on employers to those risks over which the employer has substantial control. Amtrak travel, like private auto travel, had plaintiff chosen it, was not part of plaintiff's job, nor did Norfolk Southern have substantial control over the risks associated with either mode of travel. Because plaintiff chose to commute on Amtrak, his ability to recover damages for injuries suffered as a result of the derailment should be no different from the ability of any injured Amtrak passenger to recover damages. Absence of occupational risk is central to "commuter rule" applicability. Plaintiff's travel on Amtrak exposed him to no more risk than that of any other Amtrak passenger. *See Kress v.*

*Long Island R.R.*, 526 F.Supp. 856, 859 (S.D.N.Y.1981); *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir.1959) (refusing to extend FELA coverage to injuries suffered while commuting because the employee, while commuting, is not subjected to the peculiar or abnormal dangers of railroad work, which is the focus of the Act). In short, FELA was enacted to protect railway workers against the dangers of the actual railway work, not against the risks of commuting.

The result reached here is consistent not just with *Sassaman*, but with the majority of FELA commuter cases. *See Metropolitan Coal Co.*, (railway flagman injured by shattered window while commuting held outside scope of employment for FELA recovery purposes); *Quirk v. New York C. & ST. L. R.R.*, 189 F.2d 97 (7th Cir.) (railroad employer not liable under FELA for death of supervisor killed in automobile crash when commuting home), *cert. denied*, 342 U.S. 871, 72 S.Ct. 105, 96 L.Ed. 655 (1951); *Getty v. Boston & Maine Corp.*, 505 F.2d at 1226 (railway employee sustaining parking lot injury barred by commuter rule from recovery under FELA).

■ Plaintiff seeks to distinguish this case from these commuter rule cases based on his segmented travel. He contends that the rule applies only to the driving segment of his travel, and not to other portions of his travel, including the Amtrak portion. In his view, three factors are dispositive: that Norfolk Southern paid for his Amtrak ticket, that two other railroad employees joined him on the Amtrak leg, and the considerable length of the Amtrak leg. These factors he argues, point to the conclusion that the train travel was within the

---

**5.** *See Parker v. Long Island R.R.*, 425 F.2d 1013, 1015 (2d Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970) (compensation is a factor to be considered in determining whether plaintiff is within the scope of his employment for FELA purposes); *see also Leek v. Baltimore & O.R.R.*, 200 F.Supp. 368, 371 (N.D.W.Va.1962) (court distinguishes the business traveler from the railway employee, commuting week after week, on company time, from fixed points).

**6.** It is well established that FELA recovery will be denied when the employee is injured while using a mode of travel that is not required by the employer. "Numerous cases have refused to extend FELA coverage to employees who sustained injuries en route to or from work unless the employer required the employee to use that route." *Kress v. Long Island R.R.*, 526 F.Supp. at 859; *see also Quirk v. New York, C. & ST. L. R.R.*, 189 F.2d 97, 100 (7th Cir.), *cert. denied*, 342 U.S. 871, 72 S.Ct. 105, 96 L.Ed. 655 (1951); *Sassaman v. Pennsylvania R.R.*, 144 F.2d at 952.

scope of his employment. For case support he cites *Parker v. Long Island R.R.*, 425 F.2d 1013 (2d Cir.) ("on call" railway employee injured en route home covered under FELA), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970) and *Leek v. Baltimore & O.R.R.*, 200 F.Supp. 368 (N.D. W.Va.1962) (railway switching crew injured in travel from work site to plant granted recovery under FELA).

Plaintiff's argument is unpersuasive, and his reliance on *Parker* and *Leek* is misplaced; both are easily distinguished. In *Parker* the employee was on call, available day or night, in case of an emergency. This emergency on-call status meant the employee was on duty twenty-four hours per day. By contrast, plaintiff here was not on duty while traveling home on Amtrak. The distinction in *Leek* is equally apparent. There, the injury to crew members occurred while they were traveling from the work site to the company plant. This travel is analogous not to plaintiff's Amtrak travel, but rather to plaintiff's travel from the track work site to the Alexandria station. Had plaintiff's injury occurred on this travel leg, FELA would, as in *Leek*, be applicable. On that leg of travel, plaintiff was not commuting.

■ Plaintiff next contends that the impracticality of other modes of travel in effect compelled him to travel via Amtrak, and hence FELA should apply. While courts recognize that FELA applies to workers compelled by circumstances of the employment to choose a specific mode of travel, this is not such a case. Plaintiff here was not compelled by circumstances to take Amtrak. He was free to travel by other means such as private auto, bus or air. Plaintiff's decision to use Amtrak did not "stem more directly from a specific requirement of [the] job or a specific understanding as to [plaintiff's] mode of [transportation]". *Getty v. Boston & Maine Corp.*, 505 F.2d at 1227.

## II. *Agency*

■ The commuter rule is not the only obstacle to plaintiff's recovery; he must also show Amtrak was acting as Norfolk Southern's agent in furnishing plaintiff with transportation to Spartanburg. The agency requirement, like that of the scope of employment, grows out of the fact that "[o]rdinarily, [the Act] restricts [plaintiff] to recovery for on-the-job accidents". *Thomas,* 582 F.Supp. at 515; *see also Parker,* 425 F.2d at 1015; *Young v. New York, New Haven & Hartford R.R.*, 74 F.2d 251, 252 (2d Cir.1934). But in so limiting the Act, Congress recognized that on-the-job injuries may occur from the negligence of the employer's agent, as well as the negligence of the employer. The rationale for extending FELA to acts of agents is that it is the employer who selects the agent and "by virtue of its contract [with the agent], the employer requires its employees to suffer the tender ministrations of the third party". *Thomas,* 582 F.Supp. at 518. Therefore, it is only fair to ask the employer "to share the burden of liability if its contractually created agent is careless". *Id.*

To establish the requisite agency relationship, an employee, in this context, must show 1) the existence of a contract between the employer and the alleged agent, and 2) the performance of the employer's operational activities by the alleged agent. *Sinkler v. Missouri Pac. R.R.*, 356 U.S. 326, 331, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). Plaintiff relies on § 7.5 of the 1979 Agreement between Amtrak and Norfolk Southern as the requisite contract to establish the agency relationship. In the alternative, plaintiff contends that the Amtrak ticket purchased by Norfolk Southern for plaintiff's commute forms a contract. Plaintiff also relies on the holding in *Leek v. Baltimore & O.R.R.*, 200 F.Supp. at 370, in urging that Amtrak's transport of employees to and from work constitutes an operational activity of Norfolk Southern. Plaintiff's argument fails because (i) the parties' intent, embodied in § 7.5, excludes track maintenance employees, like plaintiff, from the contract, (ii) because the ticket alone cannot form a contract, and (iii) because plaintiff, unlike the claimant in *Leek*, was engaged in off-job travel, not on-the-job travel. Each of these points is separately addressed.

Section 7.5, paragraph four of the agreement between Norfolk Southern and Amtrak reads:

> Employees of Railroad shall be entitled to ride on Intercity Rail Passenger Trains, including locomotives without charge, whenever necessary in connection with the inspection, maintenance or operation of such trains

Although this language is arguably inclusive, a close reading of the provision discloses a significant ambiguity. The provision applies only to employees "whenever necessary in connection with the inspection, maintenance or operation of such trains". Given this limiting language, it is not clear whether the agreement pertains to all employees, railway car, track and plant, or whether it is limited only to those employees working on railway cars. Under the latter interpretation, track maintenance personnel, like plaintiff, would not be covered by the agreement. To resolve this ambiguity, it is appropriate to resort to evidence reflecting the intent of the parties in this regard. Such evidence exists and it points persuasively to the conclusion that the contracting parties intended the limiting language of § 7.5 to exclude track maintenance employees like plaintiff. Thus, the parties deliberately struck language in earlier contract drafts explicitly attempting to expand the paragraph's coverage to include the deadheading of track maintenance and other facility employees. This was done because Amtrak feared that the trains would be "inundated with great numbers" of deadheading railway personnel. Plaintiff, then, cannot benefit here from the Amtrak contract.

The alternate claim of implied contract arising from the ticket purchase is also insufficient to create a contract between Amtrak and Norfolk Southern for agency purposes. This is because the purchase of the ticket forms a contract between the holder and the provider of services, not the financier of the purchase. Therefore Norfolk Southern, in purchasing the ticket for plaintiff, was not a party to that contract.

Plaintiff also fails to satisfy the operational activities requirement. "Operational activities of [the] employer" refers to the undertakings which "further the task of the [employer's] enterprise". *Sinkler v. Missouri Pac. R.R.*, 356 U.S. at 328, 78 S.Ct. at 762. These are services the employer would ordinarily perform, but has chosen, for some reason to contract out to others. Examples of operational activities are listed in *Thomas:* "a taxi ride between a work site and the rail yard[7]; ... a taxicab ride from a ship docked in a foreign country to the local United States Consul in compliance with a statute; ... operation of a cafeteria for [employees]; ... [and] medical assistance to a seaman at sea". 582 F.Supp. at 517. Unlike the plaintiff's commute home, all of these services are a necessary function of the employer's business. By, contrast the manner in which an employee commutes home is of no consequence to the "operational activities of [the] employer". Whether an employee chooses to travel by personal auto, bus or train, the business of Norfolk Southern is unaffected.

Plaintiff incorrectly relies on a statement in *Leek* to support his allegation that the transportation provided by Amtrak was an operational activity of Norfolk Southern.[8] But, this statement and the *Leek* holding would only apply where the claimant, unlike the plaintiff here, was "on-the-job" while injured. Therefore, Amtrak, for purposes of this suit, could not be considered the agent or surrogate of Norfolk Southern. Accordingly, defendant's motion must

---

**7.** This travel is analogous to plaintiff's travel from the work site to Alexandria, but not to the portion of travel by way of Amtrak.

**8.** Pertinent portions of the statement are as follows:

> It seems ... that one of the exigencies of railroading is the transportation of employees, while on the job, between more or less distant points and the subjection of the em-

> ployees to the risk of injury inherent in such transportation ... [such transportation] is one of the characteristics of the business ... [and] [i]t would seem to be consonant with the spirit of the F.E.L.A. that the employer should bear the risk of negligent injury to the employee while exposed to this risk.
> 200 F.Supp. at 370.

762

be granted.  An appropriate order will follow.