Elaine L. GOLDWATER, Plaintiff,

v.

**METRO–NORTH COMMUTER RAILROAD, Defendant.**

**No. 93 Civ. 3628 (LLS).**

United States District Court, S.D.N.Y.

Nov. 6, 1995.

Elkind, Flynn & Maurer, P.C., New York City (Ira M. Maurer, of counsel), for Plaintiff.

Krez & Peisner, New York City (Paul A. Krez, of counsel), for Defendant.

**Opinion and Order**

STANTON, District Judge.

Elaine Goldwater, an employee of the Metro–North Commuter Railroad ("Metro–North"), claims she was assaulted at a Metro–North station while waiting for a train. She sues Metro–North under the Federal Employers' Liability Act ("FELA") and state law.

Metro–North moves for summary judgment pursuant to Fed.R.Civ.P. 56(c), contending that (1) Goldwater's FELA claim is barred by the "commuter rule" and (2) Metro–North had no duty to protect Goldwater from the criminal acts of third persons.

## BACKGROUND

At the time of the incident, Goldwater was an administrative assistant to Joel Bodley, Metro–North's Safety Manager. (Pre-trial Order, Agreed Facts ¶¶ 2–3) (hereinafter "PTO") · She was required to work both in an office in New York City and at various locations outside the office as directed by Bodley. (*Id.* ¶ 4.)

Goldwater's regular work hours were 8:00 a.m. to 5:00 p.m. As a salaried employee, she was not paid for overtime nor was she paid for time spent commuting. (Walker Aff. ¶ 3; Defendant's 3(g) Statement, ¶ 8.) She was not, however, "on call" to respond to emergencies outside her normal working hours. (Defendant's 3(g) Statement, ¶ 10.)

On January 26, 1993, Bodley directed Goldwater to meet him at the Croton Harmon Metro–North facility for a safety meeting. (Bodley Dep., Krez Aff. Ex. 4, at 39.) He did not tell her to take a Metro–North train to Croton Harmon, which she did. (PTO, Agreed Facts ¶¶ 9, 11.)

While Goldwater was waiting for a train at the Marble Hill station at about 8:05 a.m.,[1] she claims she was assaulted and thrown to the tracks, causing physical and psychological injury. (PTO, Plaintiff's Proposed Findings of Fact ¶ 5.) Although Metro–North does not deny that Goldwater was assaulted,

---

1. The Marble Hill station is 23.5 rail miles from the Croton Harmon facility. (Walker Aff., Krez Aff. Ex. 8, ¶ 6.)

it did not stipulate to the assault in the pretrial order.

## DISCUSSION

### A. Summary Judgment Standard

■ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All "justifiable inferences" must be drawn in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### B. FELA Claim

■ FELA, 45 U.S.C. § 51 *et seq.,* provides a railroad employee with a remedy against her employer for injuries sustained in the course of employment as a result of the railroad's negligence.[2] The judicially-developed "commuter rule" bars recovery under FELA for injuries sustained while commuting to or from work. *See, e.g., Getty v. Boston and Maine Corp.,* 505 F.2d 1226, 1227–28 (1st Cir.1974); *Sassaman v. Pennsylvania Railroad Co.,* 144 F.2d 950, 953 (3rd Cir.1944); *Williams v. Norfolk Southern Railway Co.,* 767 F.Supp. 756, 759–60 (E.D.Va.1991); *Thompson v. National Railroad Passenger Corp.,* 774 F.Supp. 1087, 1089 (N.D.Ill.1991); *Kress v. Long Island Rail Road,* 526 F.Supp. 856, 859–60 (S.D.N.Y.1981). The policy behind the rule is that FELA was enacted to protect railway workers against the dangers of railway work, not the risks of commuting to which all passengers are exposed. *Williams,* 767 F.Supp. at 759; *Caillouette v. Baltimore & Ohio Chicago Terminal Railroad Co.,* 705 F.2d 243, 246 (7th Cir.1983).

However, courts do not apply the commuter rule when: (1) the employee is compensat-ed for time spent travelling, *Griffith v. Gardner,* 358 Mo. 859, 217 S.W.2d 519, 523 (1949); *London Guarantee & Accident Co. v. Frazee,* 112 Utah 91, 185 P.2d 284, 289 (1947); (2) the employee is on call at all times and his travel on the employer's railroad facilitates his availability, *Parker v. Long Island Rail Road,* 425 F.2d 1013, 1015 (2nd Cir.1970); *cf. Thomas v. Grigorescu,* 582 F.Supp. 514, 516 (S.D.N.Y.1984) (employer benefited from providing food and shelter for employees on layover but was not liable because cab company which caused accident was not employer's agent); or (3) the employer compels the use of a particular mode of transportation, *Tingstrom v. Smith,* 630 So.2d 257, 261–62 (La.Ct.App.1993).[3]

■ Although conceding that Bodley did not tell her to take a Metro–North train, Goldwater argues that this case nonetheless falls within the employer compulsion exception to the commuter rule. Bodley, she contends, knew she did not have a driver's license and could not afford to take a car service to Croton Harmon. He knew her only option was to take a Metro–North train.

Courts have rejected similar arguments based on employees' practical limitations, reasoning that employers have no control over such factors. In *Getty,* the court rejected an employee's argument that the employer compulsion exception applied because a snowfall the night before made it impossible for him to get to work any way other than his employer's train. 505 F.2d at 1227. In *Kress,* an employee unsuccessfully contended that her employer compelled her to commute on its trains by providing parking near its station (25 miles from the employee's work site) when there was no parking near the work site. 526 F.Supp. at 859–60. *See also Williams,* 767 F.Supp. at 760 (Although other modes were impractical, plaintiff's "decision to use Amtrak did not 'stem more directly from a specific requirement of [the] job or a specific understanding as to [plain-

---

**2.** The difference between a claim under FELA and one under state negligence law is that certain defenses, such as contributory negligence and assumption of risk, do not apply in FELA cases. *See Williams v. Norfolk Southern Railway Co.,* 767 F.Supp. 756, 758 (E.D.Va.1991).

**3.** An exception for when an employee is crossing the employer's premises on his way to or from his own work location is not at issue here. *See Schneider v. National Railroad Passenger Corp.,* 854 F.2d 14 (2nd Cir.1988).

tiff's] mode of [transportation]".) (alterations in original).

Goldwater argues that the commuter rule does not apply when an employee travels during regular work hours, citing *London Guarantee & Accident Co. v. Frazee* and *Griffith v. Gardner*. Those holdings, however, rested on considerations not present here.

In *Frazee*, an employee was injured during his regular working hours while traveling to his work location. The court upheld a lower court's finding that the employee was acting within the scope of his employment, despite the fact that he was not required to perform any duties during the ride, because the evidence at trial showed that the employee's employment commenced at the time he boarded the train. Most significantly, he was instructed to fill out his time card to include the time spent traveling. 185 P.2d at 288–89. The employee in *Griffith* was also paid for his travel time and was ordered by his employer to travel on the train on which he was injured. 217 S.W.2d at 521, 523. Here, Goldwater has submitted no evidence that Metro–North considered her to be on duty at 8:00 a.m. or paid her for travel time. She admits that Bodley did not tell her how to travel to Croton Harmon. Thus, *Frazee* and *Griffith* do not preclude application of the commuter rule.

Nor do the cases Goldwater cites support her argument that the commuter rule does not apply to an employee who travels to an alternate work site at the direction of her supervisor. In *Healy v. Pennsylvania Railroad Co.*, 184 F.2d 209, 212 (3rd Cir.1950) and *Salabrin v. Ann Arbor Railroad Co.*, 194 Mich. 458, 160 N.W. 552, 552 (1916), an employer instructed employees to take a particular mode of transportation from the regular work site to another place, thus supplying the employer compulsion required to defeat application of the commuter rule.

In *Atlantic Coast Line Railroad v. Smalls*, 216 F.2d 842, 844 (4th Cir.1954), the court held that employees who were traveling to a safety meeting on one of the employer's trains were acting within the scope of their employment. The policy behind the commuter rule—protecting railroad employees against the risks of railway work—requires a narrow reading of *Smalls* despite its broad language. The employees in *Smalls* were waiting for their employer's train at a crossing at which the train did not ordinarily stop when they were struck by a car. They were thus exposed to hazards not faced by non-employee passengers as a result of the special arrangements their employer made to transport them to the meeting. Here, by contrast, Goldwater was waiting at a station which was open to the public and she was exposed to no additional dangers by virtue of her status as an employee.

Goldwater has not submitted evidence from which a reasonable jury could conclude that her claim falls within one of the exceptions to the commuter rule. Metro–North did not require or encourage her to use any particular mode of transportation to travel to Croton Harmon and it did not benefit from the fact that she took its train. She was not paid for time spent traveling, nor was she considered to be on call at all times. The risks she faced at the Marble Hill station were the same as those faced by any other passenger and were not connected to her railway work.

Goldwater's FELA claim is dismissed.

## C. State-law Negligence Claim

Goldwater claims that Metro–North "fail[ed] to provide reasonable security at [its] Marble Hill Station when [it] knew or should have known that waiting passengers were at risk of being assaulted on the Marble Hill Station platform; fail[ed] to enact and enforce safety and operating rules, regulations, procedures and practices which would have prevented or reduced the risk that plaintiff would be assaulted while waiting for a train at [its] Marble Hill Station." (Complaint, Krez Aff. Ex. 1, ¶ 14.) In the joint pre-trial order, she proposed findings regarding Metro–North's design and maintenance of the Marble Hill station. (*See* PTO, Plaintiff's Proposed Findings of Fact ¶¶ 20, 22.)

■ To prove negligence, a plaintiff must show that (1) the defendant owed a duty to her, (2) the defendant breached that duty, (3) the breach proximately caused her injury, and (4) she sustained actual damages. *E.g.,*

*Febesh v. Elcejay Inn Corp.,* 555 N.Y.S.2d 46, 47, 157 A.D.2d 102, 104 (1st Dep't 1990).

 A governmental or quasi-governmental entity[4] owes no duty to protect a person on its premises from a third person's assault absent facts establishing a special relationship between the entity and the person assaulted. *Weiner v. Metropolitan Transportation Auth.,* 448 N.Y.S.2d 141, 144, 55 N.Y.2d 175, 181, 433 N.E.2d 124 (Ct.App. 1982). That rule rests on the idea that the allocation of police resources is a legislative-executive decision or governmental function for which there should be no liability. *Id.*

Goldwater argues that *Weiner* does not control here because that case dealt only with the failure to provide police protection and she alleges negligence in the design and maintenance of the Marble Hill station. Although *Weiner* addressed the absence of police surveillance and the failure to warn of criminal activity around a subway entrance, later cases have extended its rule to dismiss suits alleging negligent failure to erect a higher fence around a bus stop, *Giamboi v. New York City Transit Auth.,* 479 N.Y.S.2d 929, 930, 124 Misc.2d 810, 811 (Sup.Ct. 2nd and 11th Dists.1984); placement of construction materials in a subway tunnel, *Clinger v. New York City Transit Auth.,* 626 N.Y.S.2d 1008, 1009, 85 N.Y.2d 957, 959, 650 N.E.2d 855, 856 (Ct.App.1995); failure to lock off a closed token booth area, *Farber v. New York City Transit Auth.,* 531 N.Y.S.2d 360, 361, 143 A.D.2d 112, 113 (2nd Dep't 1988); and failure to provide adequate lighting. *Rivera v. New York City Transit Auth.,* 585 N.Y.S.2d 367, 368, 184 A.D.2d 417, 418 (1st Dep't 1992). As the *Giamboi* court stated, "This broad protection is based on the theory that if the Authority were required to utilize non-police measures to protect individuals from attacks by third parties, these measures might stretch its resources as much as providing police protection." 479 N.Y.S.2d at 930, 124 Misc.2d at 811.

 Goldwater's allegations regarding Metro–North's design and maintenance of the Marble Hill station implicate the governmental functions of providing security to passengers and "policymaking regarding the risks presented." *Bonner v. City of New York,* 73 N.Y.2d 930, 932, 539 N.Y.S.2d 728, 729, 536 N.E.2d 1147, 1148 (Ct.App.1989). Thus, for Metro–North to be liable, Goldwater must establish a special relationship between her and Metro–North.

 To establish a special relationship, a plaintiff must show: (1) an assumption by the governmental entity, through promises or actions, of an affirmative duty to act on the plaintiff's behalf; (2) knowledge on the part of the entity's agents that inaction could lead to harm; (3) some form of direct contact between the agents and the plaintiff; and (4) the plaintiff's reliance on the affirmative undertaking. *Kircher v. City of Jamestown,* 544 N.Y.S.2d 995, 998, 74 N.Y.2d 251, 257 (Ct.App.1989). Goldwater does not dispute Metro–North's contention that she cannot prove those elements (*see* PTO, Agreed Facts ¶¶ 16–17), but instead argues that her employment by Metro–North supplies the special relationship.

However, as discussed in part A, Goldwater was an ordinary commuter when she entered the Marble Hill station. Metro–North owed her the same duty of protection from third parties (that is to say, none in the absence of a special relationship) that it owed to all commuters. The fact that Goldwater happened also to be a Metro–North employee does not create a duty on the part of Metro–North to give her more protection than it does the commuting public.

Goldwater's negligence claim is dismissed.

### CONCLUSION

Metro–North's motion for summary judgment is granted.

The Clerk is directed to dismiss the complaint with costs and disbursements according to law.

---

**4.** Metro–North is a public benefit corporation and a wholly-owned subsidiary of the Metropolitan Transit Authority, which is a public authority of the State of New York. (PTO, Agreed Facts ¶ 13.)